Kenji Kozuma, OSB# 954806
Email: kenji@kblawpdx.com
KB Law, LLC
1717 NE 42nd Avenue, #3210
Portland, OR 97213
P: (503) 206-8122

Joseph N. Casas (Lead Counsel)
     *(pro hac vice application forthcoming)*
Email: joseph@talentrights.law
THE CASAS LAW FIRM, P.C.
402 West Broadway Street, Suite 400
San Diego, California 92101
P: (855) 267-4457

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

|  |  |
|---|---|
| JESSICA HINTON a/k/a JESSA HINTON, KIMBERLY COZZENS a/k/a KIM COZZENS, CIELO JEAN "CJ" GIBSON, JAMILLETTE GAXIOLA, LUCY PINDER, CARISSA ROSARIO, and MARIANA DAVALOS, | CASE NO.: _____ |
|      Plaintiffs, | COMPLAINT AND DEMAND FOR JURY TRIAL |
| v. | |
| W. T. H., INC. d/b/a STARS CABARET BEND; SCTO, INC. d/b/a STARS CABARET BRIDGEPORT; JEFF STRUHAR; SCS2, INC. d/b/a STARS CABARET; and TODD MITCHELL, | |
|      Defendants. | |

///

///

///

COMPLAINT AND
DEMAND FOR JURY TRIAL - PAGE 1

Plaintiffs JESSICA HINTON a/k/a JESSA HINTON, KIMBERLY COZZENS a/k/a KIM COZZENS, CIELO JEAN "CJ" GIBSON, JAMILLETTE GAXIOLA, LUCY PINDER, CARISSA ROSARIO, and MARIANA DAVALOS, (collectively, "Plaintiffs"), file this Complaint against W. T. H., INC. d/b/a STARS CABARET BEND; SCTO, INC. d/b/a STARS CABARET BRIDGEPORT; JEFF STRUHAR; SCS2, INC. d/b/a STARS CABARET; and TODD MITCHELL (collectively, "Defendants") respectfully allege as follows:

## BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their strip clubs; Stars Cabaret Bend located at 197 NE 3rd Street, Bend, Oregon 97701 (hereinafter referred to as "Bend Location"); Stars Cabaret Bridgeport located at 17939 SW McEwan Rd, Tigard, Oregon 97224 (hereinafter referred to as "Bridgeport Location") , Stars Cabaret located at 1550 Weston CT NE, Salem, Oregon 97301 (hereinafter referred to as "Salem Location"). The clubs shall hereinafter be collectively referred to as "Stars Cabaret".

2.     As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Violation of Oregon's Unlawful Trade Practices Act, O.R.S. § 646.638; d) Violation of Right of Publicity & Privacy - Misappropriation of Image and Likeness; e) Defamation of Character; and f) Negligence, Gross Negligence, and Respondeat Superior.

3.     In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

COMPLAINT AND
DEMAND FOR JURY TRIAL - PAGE 2

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. §1125(a)(1)(A).  This Court also has subject matter jurisdiction because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

5.       This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.       Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.       According to publicly available records, Defendant W. T. H., INC. is a corporation formed under the laws of the state of Oregon, with its principal place of business located at 197 NE 3rd, Bend, Oregon, 97701. Upon information and belief, W. T. H., INC operates Stars Cabaret Bend location, which is located at 197 NE 3rd Street, Bend, Oregon 97701.

8.       According to publicly available records, Defendant SCTO, INC. is a corporation formed under the laws of the state of Oregon, with its principal place of business located at 17939 SW McEwan Rd., Tigard, Oregon, 97224. Upon information and belief, SCTO, INC operates Stars Cabaret Bridgeport, which is located at 17939 SW McEwan Rd, Tigard, Oregon 97224.

9.       According to publicly available records, Defendant Jeff Struhar, is an individual operating under the laws of Oregon, who is an Owner and/or CEO of W. T. H., INC and SCTO, INC. Upon information and belief, Jeff Struhar can be located at 16869 SW 65th Ave Suite 504, Lake Oswego, Oregon 97035.

10.       According to publicly available records, Defendant SCS2, INC. is a corporation formed under the laws of the state of Oregon, with its principal place of business located at 1550 Weston Court, Salem, Oregon, 97301. Upon information and belief, SCS2, INC operates Stars Cabaret Salem Location, which is located at 1550 Weston CT NE, Salem, Oregon 97301.

**THE CASAS LAW FIRM, P.C.**
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457 | F: 855-220-9626

11.     According to publicly available records, Defendant Todd Mitchell, is an individual operating under the laws of Oregon, who is an Owner and/or CEO of SCS2, INC. Upon information and belief, Todd Mitchell can be located at 17937 SW McEwan Rd #250, Tigard, Oregon 97224.

12.     Venue is proper in the United States District Court for the District of Oregon because Defendants' principal place of business is located in Deschutes County, Baker County, and Marion County, Oregon.

13.     A significant portion of the alleged causes of action arose and accrued in Bend, Tigard, and Salem, Oregon and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in within the District of Oregon.

## PARTIES

### *Plaintiffs*

14.     Plaintiff Jessica Hinton a/k/a Jessa Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

15.     Plaintiff Kimberly Cozzens a/k/a Kim Cozzens ("Cozzens") is a well-known professional model, and a resident of Santa Clara County, California.

16.     Plaintiff Cielo Jean "CJ" Gibson ("Gibson") is a well-known professional model, and a resident of Los Angeles County, California.

17.     Plaintiff Jamillette Gaxiola ("Gaxiola") is a well-known professional model, and a resident of Clark County, Nevada.

18.     Plaintiff Lucy Pinder (Pinder") is a well-known professional model, and a resident of England.

19.     Plaintiff Carissa Rosario ("Rosario") is a well-known professional model, and a resident of Broward County, Florida.

20.     Plaintiff Mariana Davalos ("Davalos") is a well-known professional model, and a

COMPLAINT AND
DEMAND FOR JURY TRIAL - PAGE 4

**THE CASAS LAW FIRM, P.C.**
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457 | F: 855-220-9626

resident of Columbia.

**Defendants**

21.    Defendant, W. T. H., INC. is a corporation formed under the laws of the state of Oregon and registered to conduct business in Oregon. During times relevant to this action, W. T. H., INC operated Stars Cabaret, Bend Location.

22.    Defendant, SCTO, INC is a corporation formed under the laws of the state of Oregon and registered to conduct business in Oregon. During times relevant to this action, SCTO, INC operated Stars Cabaret, Bridgeport Location.

23.    According to publicly available records, Jeff Struhar, in their capacity as principal, owner and/or CEO of W. T. H., INC and SCTO, INC, maintained operational control over Stars Cabaret, Bend Location and Bridgeport Location, including all advertising relating thereto.

24.    Defendant, SCS2, INC, is a corporation formed under the laws of the state of Oregon and registered to conduct business in Oregon. During times relevant to this action, SCS2, INC operated Stars Cabaret, Salem Location.

25.    According to publicly available records, Todd Mitchell, in their capacity as principal, owner and/or CEO of SCS2, INC, maintained operational control over including all advertising relating thereto.

26.    Stars Cabaret, by and through their respective agents and employees, engage in a pattern of cross-promotion and marketing.

27.    Service of process may be perfected upon Defendant W. T. H., INC. by serving the registered agent for service of process, Randy Kaiser, who can be located at 17937 SW McEwan Rd #250 B, Tigard, OR 97224.

28.    Service of process may be perfected upon Defendant SCTO, INC. by serving the registered agent for service of process, Randy Kaiser, who can be located at 17937 SW McEwan Rd 250, Tigard, OR 97224.

COMPLAINT AND
DEMAND FOR JURY TRIAL - PAGE 5

**THE CASAS LAW FIRM, P.C.**
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457 | F: 855-220-9626

29.     Service of process may be perfected upon Defendant SCS2, INC. by serving the registered agent for service of process, Randy Kaiser, who can be located at 17937 SW McEwan Rd STE 250, Tigard, OR 97224.

## FACTUAL ALLEGATIONS

30.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

31.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

32.     In early 2022, Plaintiffs, by and through their attorneys and at Plaintiffs' direction, began to conduct research in the Oregon area to determine whether establishments such as Defendants were using their Images without their authorization or consent.   In November 2024, Plaintiffs discovered and identified their Images in Defendant's social media accounts to promote and advertise their strip clubs.   The Images which are the subject of this lawsuit are attached to this first amended complaint as Exhibits A-G.

33.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

34.     In the case of each Plaintiff, this apparent claim was false.

35.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

36.     No Plaintiff has ever received any remuneration for Defendants' improper and

illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

37.　　Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand. By using the Plaintiffs' image and likeness, Defendants did not use their own advertising idea, and instead used the Plaintiffs' (or their licensees') advertising ideas to promote their establishment to the public.

***Plaintiffs' Individual Backgrounds and Careers***

38.　　Hinton was discovered by a talent manager at a wedding at age 14. By age 16, she locked in three national TV commercials and made guest appearances on Baywatch and 7th Heaven. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the Palms Hotel & Casino's ad campaign. She then pursued TV personality roles hosting for Victory Poker, and Top Rank Boxing interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's *Playmate of the Month* becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Hinton also attained spokesmodel roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, and Protein World. She has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue, and Roma Costume, in addition to hosting a Los Angeles, CA television station KTLA. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as *FHM, Kandy, MMA Sports, Guitar World*, and *Muscle & Fitness*. She was named Creative Director for MAJR Media and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over

COMPLAINT AND
DEMAND FOR JURY TRIAL - PAGE 7

3.8 million followers on Facebook, Instagram and X (formerly known as Twitter). [1]

39.    That we know of, Hinton is depicted in the photos in **Exhibit "A"** to promote Stars Cabaret (Bridgeport Location and Salem Location) on their Instagram, Facebook and X pages. These Images were intentionally altered to make it appear that Hinton was either a stripper working at Stars Cabaret, that she endorsed Stars Cabaret, or that she was otherwise associated or affiliated with Stars Cabaret.

40.    Hinton has never been employed at Defendants' establishments, has never been hired to endorse Stars Cabaret, has never been otherwise associated or affiliated with Stars Cabaret, has received no remuneration for Stars Cabaret's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41.    Cozzens is a model and actress who has appeared on an Old Spice national commercial, as well as a New Amsterdam Vodka national commercial. She has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort, Dodge, and Pepsi to name a few. Kim in total, has signed with 12 top agencies internationally, two of them being LA Models and LATALENT.

42.    That we know of, Cozzens is depicted in the photo in **Exhibit "B"** to promote the Stars Cabaret (Bend Location) on their Instagram and Facebook pages. This Image was intentionally altered to make it appear that Cozzens was either a stripper working at Stars Cabaret, that she endorsed Stars Cabaret, or that she was otherwise associated or affiliated with Stars Cabaret.

43.    Cozzens has never been employed at Defendants' establishments, has never been hired to endorse Stars Cabaret, has never been otherwise associated or affiliated with Stars Cabaret, has received no remuneration for Stars Cabaret's unauthorized use of her Image, and has suffered,

[1]In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

and will continue to suffer, damages as a result of same.

44.     Gibson is an American model who enjoys great success in her industry. Gibson was the *Import Tuner* magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including *FHM, American Curves, Supreme, MuscleMag International, Muscle & Fitness*, and *Teeze*. Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing. Gibson has 98.7K Instagram followers.

45.     That we know of, Gibson is depicted in the photo in **Exhibit "C"** to promote the Stars Cabaret (Bridgeport Location) on their Facebook page. This Image was intentionally altered to make it appear that Gibson was either a stripper working at Stars Cabaret, that she endorsed Stars Cabaret, or that she was otherwise associated or affiliated with Stars Cabaret.

46.     Gibson has never been employed at Defendants' establishments, has never been hired to endorse Stars Cabaret, has never been otherwise associated or affiliated with Stars Cabaret, has received no remuneration for Stars Cabaret's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

47.     Gaxiola began her career as a teenager. She was spotted by a modeling agent at a fast-food restaurant, and after some initial resistance, the teenage beauty decided to try modeling. She became Miss Cuba at the age of 18, and quickly became popular among fashion designers and magazines. She is active in a number of social and charitable causes, and one of her personal missions has been to help young women deal with self-esteem issues. In a small period of time, she has possessed the work ethic and dedication to transition between Beauty, Fashion, TV, and is

**THE CASAS LAW FIRM, P.C.**
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457 | F: 855-220-9626

now a Sports Personality representing the UFC. She has worked for designer brands such as Reebok, Hurley, Guess Jeans, Victoria Secret, Nike, MAC Cosmetics, Roberto Cavalli, Naeem Khan, Paul Marciano, Fendi, Saks Fifth Avenue and Niemen Marcus. She is also the current face of UFC. Her beauty pageants consist of Miss Cuba Grand International, and Miss Cuba International. Gaxiola's magazine highlights include those of *GQ Magazine, Maxim Australia, Open Magazine, and Esquire*. She has over 205K Instagram followers.

48.    That we know of, Gaxiola is depicted in the photo in **Exhibit "D"** to promote the Stars Cabaret (Bend Location) on its Facebook page. This Image was intentionally altered to make it appear that Gaxiola was either a stripper working at Stars Cabaret, that she endorsed Stars Cabaret, or that she was otherwise associated or affiliated with Stars Cabaret.

49.    Gaxiola has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

50.    Pinder is, and at all times relevant to this action was, an English model, actress, host, businesswoman, and one of Great Britain's most famous glamour models. Pinder has featured in publications such as *FHM, Nuts, Loaded, The Daily Star*, and hundreds of others. Pinder has appeared on *FHM's* list of the "100 Sexiest Women in the World" in 2005, 2006, and 2007. She was a guest columnist in Nuts, entitled "The Truth About Women" and appeared on the final edition of the *Nuts* magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) among others, and on large national and international advertising campaigns. Pinder has an established an acting career with many TV appearances and Film credits. She has appeared on shows such as I'm Famous and Frightened, Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, and Team and Bo! in the USA. Pinder was also a contestant on Celebrity Big Brother. Pinder starred in films such as The

**THE CASAS LAW FIRM, P.C.**
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457 | F: 855-220-9626

Seventeenth Kind, Age of Kill, and Warrior Savitri. Pinder works closely with a number of Wildlife charities and is involved in fundraising for Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue. Pinder has also worked with Help for Heroes appearing in the Hots Shots fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Pinder's own annual calendar continues to be one of the bestselling model calendars years after year and enhances Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram, and X (formerly known as Twitter).

51.    That we know of, Pinder is depicted in the photos in **Exhibit "E"** to promote the Stars Cabaret (Bridgeport Location) on their Facebook and Instagram pages. These Images were intentionally altered to make it appear that Pinder was either a stripper working at Stars Cabaret, that she endorsed  Stars Cabaret, or that she was otherwise associated or affiliated with Stars Cabaret.

52.    Pinder has never been employed at Defendants' establishment, has never been hired to endorse Stars Cabaret, has never been otherwise associated or affiliated with Stars Cabaret, has received no remuneration for Stars Cabaret's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

53.    Rosario is a model, spokesperson, and businesswoman. She has modeled in commercials for Budweiser and Comcast, and is a spokesperson for Monster Energy Drinks, Protein World, and Budweiser. Rosario also has her own perfume company line. She has also appeared in magazines such as *International Maxim, GQ, FHM Model, Mode Lifestyle Magazine*, *Rukus, DSS Spain* magazine, and others. Rosario also has her own perfume company line. She is well known in the Social Media world, with over 1.8 million Facebook followers, and over 1 million Instagram followers.

**THE CASAS LAW FIRM, P.C.**
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457 | F: 855-220-9626

54.    That we know of, Rosario is depicted in the photo in **Exhibit "F"** to promote the Stars Cabaret (Bend Location) on their Facebook page. This Image was intentionally altered to make it appear that Rosario was either a stripper working at Stars Cabaret, that she endorsed Stars Cabaret, or that she was otherwise associated or affiliated with Stars Cabaret.

55.    Rosario has never been employed at Defendants' establishment, has never been hired to endorse Stars Cabaret, has never been otherwise associated or affiliated with Stars Cabaret, has received no remuneration for Stars Cabaret's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

56.    Davalos established a modeling career in Colombia as one of the most famous and successful models in all of Latin America by the age of 18. Davalos was the face of Nacar cosmetics and has appeared in *Maxim* magazine, *Imagen* magazine, Bésame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori. Davalos is constantly listed in "The top sexiest people in the world" lists and whether solo or teamed up with her twin sister is constantly in demand. Davalos' worldwide identity has continued to grow, and her earning capabilities have increased dramatically over 500,000 Instagram, X, and Facebook followers.

57.    That we know of, Davalos is depicted in the photo in **Exhibit "G"** to promote Stars Cabaret (Bridgeport Location) on their Facebook and Instagram pages. This Image was intentionally altered to make it appear that Davalos was either a stripper working at Stars Cabaret, that she endorsed Stars Cabaret, or that she was otherwise associated or affiliated with Stars Cabaret.

58.    Davalos has never been employed at Defendants' establishment, has never been hired to endorse Stars Cabaret, has never been otherwise associated or affiliated with Stars Cabaret, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

COMPLAINT AND
DEMAND FOR JURY TRIAL - PAGE 12

**THE CASAS LAW FIRM, P.C.**
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457 | F: 855-220-9626

*Defendants' Business Activities and Misappropriation*

59.     Defendants operate (or operated, during the relevant time period,) a strip club, where they are (or were) engaged in the business of selling alcohol in an atmosphere were nude and/or semi-nude women entertain the business's clientele.

60.     Defendants own, operate, and control Stars Cabaret' social media accounts, including its Facebook, X, and Instagram accounts.

61.     Defendants used Stars Cabaret' Facebook, X, and Instagram accounts to promote Stars Cabaret, and to attract patrons.

62.     Defendants did this for their own commercial and financial benefit.

63.     Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Stars Cabaret, endorsed Stars Cabaret, or was otherwise associated or affiliated with Stars Cabaret.

64.     Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Stars Cabaret to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

65.     Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Stars Cabaret, and at no point have any of the Plaintiffs ever endorsed Stars Cabaret or otherwise been affiliated or associated with Stars Cabaret.

66.     All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

67.     Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

68.     Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

69.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

70.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

71.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

72.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Stars Cabaret.

73.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

74.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Stars Cabaret.

75.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

**THE CASAS LAW FIRM, P.C.**
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457 | F: 855-220-9626

76.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

77.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Stars Cabaret' website, X, Facebook, or Instagram accounts.

78.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

79.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

80.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Plaintiffs from the conduct described herein

81.     Defendants used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendants' establishment or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' establishment, and thereby generate revenue for Defendants.

82.     Thus, this was done in furtherance of Defendants' commercial benefit.

83.     Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendants' customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

**THE CASAS LAW FIRM, P.C.**
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457 | F: 855-220-9626

84.     Both Plaintiffs and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

85.     As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendants used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

86.     Defendants' use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendants' establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

87.     Despite the fact that Defendants were at all times aware that Plaintiffs neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendants' establishment.

88.     Defendants knew that their use of P Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendants' establishment.

89.     Upon information and belief, Defendants' use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

90.     As a direct and proximate result of Defendants' actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs'

**THE CASAS LAW FIRM, P.C.**
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457 | F: 855-220-9626

image, likeness and/or identity is being depicted by Defendants.

91.     Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

92.     Due to Defendants' unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

93.     WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)

94.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

95.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendants and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

96.     Defendants used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use their image in order to advertise, promote, and market

COMPLAINT AND
DEMAND FOR JURY TRIAL - PAGE 17

**THE CASAS LAW FIRM, P.C.**
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457 | F: 855-220-9626

Defendants' businesses, Defendants' establishment, and/or Defendants' establishment events and activities.

97.     Defendants' use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendants' businesses, Defendants' establishment, and/or Defendants' events and activities as described in this Complaint was false and misleading.

98.     Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, Defendants' establishment or Defendants' events or activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendants' events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

99.     Defendants' false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendants' establishment, as to the general quality of attendees and participants of Defendants' establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, Defendants' establishment or Defendants' establishment events or activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendants' establishment events and activities.

100.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, or Defendants' establishment events and activities, or consented to or authorized Defendants' usage of their image in order to advertise, promote, and market Defendants' businesses or Defendants' establishment

**THE CASAS LAW FIRM, P.C.**
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457 | F: 855-220-9626

events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants' establishment, visit Defendants' establishment, and participate in events at Defendants' establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendants' establishment, visit Defendants' establishment and take part in the events at Defendants' establishment.

101.    Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' establishment and their activities and attracting clientele to Defendants' establishment.

102.    Defendants knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

103.    Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

104.    Defendants' wrongful conduct as described herein was willful.

105.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

106.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

107.    The method and manner in which Defendants used the image of Plaintiffs further evinces that Defendants were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendants' use of their image to advertise Defendants' businesses.

108.    Defendants have caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendants' establishment.

THE CASAS LAW FIRM, P.C.
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457 | F: 855-220-9626

109.    Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(Violation of Oregon's Unlawful Trade Practices Act, O.R.S. § 646.638)**

110.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

111.    Defendants operated Defendants' website and social media accounts in order to promote Defendants, to attract clientele thereto, and to thereby generate revenue for Defendants.

112.    As such, Defendants' operation of the website and social media accounts, and their publication of image and likeness thereon, were in commerce, in that they involved a business activity and the day-to-day activities and affairs of Defendants in Oregon.

113.    Defendants published Plaintiffs' image and likeness on Defendants' website and social media accounts to create the false impression that Plaintiffs were either employees working at Defendants, endorsed Defendants, or were otherwise affiliated, associated, or connected with Defendants.

114.    In doing so, Defendants' engaged in an unlawful practice if in the course of the their business, vocation or occupation by, inter alia, (a) passing off Plaintiffs' good or services as their own, (b) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of Defendants' goods or services (c) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have; and (d) representing that goods or services are of a particular standard, quality, or grade, or that goods or services are of a particular style or model, if the goods or services are of another.

115.    As such, by publishing Plaintiffs' image and likeness, Defendants mislead the

COMPLAINT AND
DEMAND FOR JURY TRIAL - PAGE 20

public as to Plaintiffs' employment at and/or affiliation with Defendants and/or Defendants' nature of services offered at their establishment, i.e. making the public at large believe that Plaintiffs would be present at Defendants' establishment and or participate in Defendants' activities, including, but not limited to: drinking and dancing.

116.    Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were unfair, in that they were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers in Oregon.

117.    Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were deceptive, in that they possessed the tendency or capacity to mislead, or created the likelihood of deception, affecting members of the public in Oregon and thereby causing injury to Plaintiffs.

118.    Upon information and belief, members of the public relied upon and were in fact deceived by Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public.

119.    Defendants thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of Oregon and caused injury to the Plaintiffs as complained of herein.

120.    Defendants' advertising practices offend the public policy of Oregon insofar as they constitute misappropriation of Plaintiffs' property rights in their own image and likeness, breaches of copyrights and/or licenses held by others, and invasion of Plaintiffs' privacy, for Defendants' commercial benefit.

121.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are employees at Defendants.

122.     Defendants' advertising practices cause substantial injury to consumers and the Plaintiffs by creating the false impression that Plaintiffs are employees at, endorse, or are otherwise affiliated with Defendants.

123.     There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants' own commercial interests.

124.     As a result of Defendants' unauthorized and misleading publication of Plaintiffs' image and likeness on its website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

125.     As a result of Defendants' unauthorized and misleading use of Plaintiffs' image and likeness, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## FOURTH CAUSE OF ACTION
### (Violation of Right of Publicity & Privacy - Misappropriation of Image and Likeness)

126.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

127.     Defendants have appropriated each Plaintiffs' image and likeness for Defendants' commercial purposes without authority or consent from each of Plaintiffs.

128.     Each Plaintiff is a well-known professional model and/or social media influencer who earns their livelihood modeling and licensing their image and likeness to companies, magazines and individuals for the purpose of advertising products and services.

129.     Defendants misappropriated Plaintiffs' likenesses by publishing their image and likeness on Defendants' website or related social media accounts as part of Defendants' advertising campaign.

130.     Each of the Plaintiffs' image and likeness was misappropriated, and/or altered by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

131.    Defendants' website and social media accounts were designed to advertise and attract business to Defendants and generate revenue for Defendants.

132.    Plaintiffs are further informed and believe and hereon allege that the manner in which Defendants posted and publicized their Image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

133.    Plaintiffs are further informed and believe and hereon allege that Defendants' republished Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint and further allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

134.    Upon information and belief, Defendants' use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendants.

135.    At no point did Defendants ever seek or receive permission or consent to use any Plaintiffs' image and likeness for any purpose.

136.    Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their image and likeness in any medium for any purpose.

137.    At no point did Defendants ever compensate Plaintiffs for their unauthorized use of their image and likeness.

138.    Defendants' misappropriation of Plaintiffs' image and likeness was a proximate cause of the harm done to Plaintiffs from Defendants' unauthorized use of their image and likeness.

139.    Plaintiffs have been damaged in amounts to be proved at trial.

///

///

COMPLAINT AND
DEMAND FOR JURY TRIAL - PAGE 23

## FIFTH CAUSE OF ACTION
### (Defamation of Character)

140.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

141.     As detailed throughout this Complaint, Defendants have published photographs containing the image and likeness of Plaintiffs in order to promote Defendants to the general public and potential clientele.

142.     Defendants' publication of the image and likeness was in a manner that made it appear as if though Plaintiffs were either employed by Defendants, endorsed Defendants, or participated in the activities that take place at the Defendants. In doing so, Defendants subjected Plaintiffs to contempt or ridicule and/or diminished the esteem, respect, goodwill or confidence in which Plaintiffs are held or excited adverse, derogatory or unpleasant feelings or opinions against Plaintiffs.

143.     In publishing Plaintiffs' altered image and likeness, Defendants created false impression to the general public that Plaintiffs were employees working at Defendants, endorsed Defendants, and or participated in the activities and lifestyle that Defendants condone, promote, and allows to happen at their establishment. None of these representations were true and Defendants' use of Plaintiffs' image and likeness are defamatory because they falsely ascribe to another conduct, characteristics or a condition incompatible with the proper conduct of their lawful business, trade, or profession.

144.     Plaintiffs allege that Defendants published the image and likeness of Plaintiffs with actual malice, and their acts were gross and wanton, evidencing a reckless disregard for the rights of Plaintiff, because the Defendants knew that Plaintiffs were not employed by Defendants, had no affiliation with Defendants, and/or had not consented to the use of their image and likeness, and had not been compensated for the use of the same.

145.     Despite Defendants' knowledge and reckless disregard of the true facts, they

nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for themselves.

146. Defendants' publication of Plaintiffs' image and likeness constitutes defamation per se under Oregon law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., working as a stripper and/or participating in the activities that take place at Defendants' establishment - which would subject each Plaintiffs to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

147. Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Oregon law because said publication would tend to impeach and injure each Plaintiff in its trade, business, and profession as a professional model.

148. Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Oregon law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to them.

149. Defendants' publication of Plaintiffs' image and likeness caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Negligence, Gross Negligence, and Respondeat Superior)

150. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

151. Plaintiffs are further informed and believes and hereon alleges that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-

COMPLAINT AND
DEMAND FOR JURY TRIAL - PAGE 25

**THE CASAS LAW FIRM, P.C.**
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457 | F: 855-220-9626

consensual use of intellectual property, copyrights, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

152.     Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

153.     Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

154.     Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

155.     Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

156.     Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and Oregon law, were not violated. Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

157.     Defendants' breaches were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs.

158.     Defendants' breaches were the proximate cause of the harm Plaintiffs suffered when their image and likeness were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

159.     As a result of Defendants' negligence and gross negligence, Plaintiffs have suffered

COMPLAINT AND
DEMAND FOR JURY TRIAL - PAGE 26

**THE CASAS LAW FIRM, P.C.**
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457 | F: 855-220-9626

damages and are entitled to recover compensatory and punitive damages from the Defendants in an amount to be determined at trial.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a)     For the Defendants to be adjudged liable to Plaintiffs upon Plaintiffs' first through sixth causes of action;

(b)     For an award of actual damages to be paid by Defendants to Plaintiffs, in an amount to be determined at trial but currently estimated not to exceed $1,230,000.00 relating to Plaintiffs' first through sixth causes of action;

(c)     For an order permanently enjoining Defendants from using Plaintiffs' Images for any purpose;

(d)     For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117, and the Oregon's Unlawful Trade Practices, O.R.S. § 646.605;

(e)     For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117, and the Oregon's Unlawful Trade Practices, O.R.S. § 646.605; and

(f)  For such other and further relief as the Court may deem just and proper.


Dated: January 10, 2025                    Respectfully submitted,

                                           KB Law, LLC

                                           By: _s/ Kenji Kozuma_
                                           Kenji Kozuma, OSB# 954806
                                           Email: kenji@kblawpdx.com
                                           1717 NE 42nd Avenue, #3210
                                           Portland, OR 97213


COMPLAINT AND
DEMAND FOR JURY TRIAL - PAGE 27

O: (503) 206-8122
D: (503) 449-4132
F: (503) 477-9132
*Of Attorneys for Plaintiffs*

Joseph N. Casas
(*pro hac vice* application forthcoming)
joseph@talentrights.law
THE CASAS LAW FIRM, P.C.
402 West Broadway Street, Suite 400
San Diego, California 92101
P: 855-267-4457
F: 855-220-9626
*Of Attorneys for Plaintiffs*

COMPLAINT AND
DEMAND FOR JURY TRIAL - PAGE 28